444 So.2d 797 (1984)
Frank D. FERRY, Plaintiff-Appellant,
v.
Vera Peggy FERRY, Defendant-Appellee.
No. 83-324.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
*798 James D. Davis, Alexandria, for plaintiff-appellant.
Humphries & Humphries, G. Earl Humphries, III, Alexandria, for defendant-appellee.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOMENGEAUX, Judge.
This case originated when Frank D. Ferry filed a rule to amend visitation against his wife, Vera Peggy Ferry.[*] Mrs. Ferry sought to enforce the visitation schedule pursuant to the signed court judgment. Mr. Ferry was found in contempt of a court order for wilfully disobeying the judgment which established visitation privileges of the couple's four year old son, Danny. Mr. Ferry has devolutively appealed.

FACTS
Frank D. Ferry and Vera Peggy Ferry are judicially separated. On August 30, 1982, Mr. Ferry was awarded custody of their minor son and visitation rights were granted to Mrs. Ferry.[1]
On December 31, 1982, Mrs. Ferry telephoned Mr. Ferry from her work place to tell him when she would pick up the child. Mr. Ferry informed her then that he would not relinquish the child if she was scheduled to work that weekend. That evening Mrs. Ferry drove to Boyce to pick up the child for the weekend. In the meantime, Mr. Ferry took the child to visit at the neighbors (Mr. and Mrs. Budnick). He and his son stayed at the Budnicks' house for several hours. Because Mr. Ferry was not at home with the child, Mrs. Ferry was unable to exercise her visitation privileges that weekend.[2]
On January 5, 1983, Mrs. Ferry filed a motion against Mr. Ferry for constructive contempt. The district court then issued a rule to show cause. Trial of the rule was held on January 17, 1983. Mr. Ferry was found guilty of committing a constructive contempt of court by violating the signed judgment of the Ninth Judicial District Court.
*799 Mr. Ferry was fined $100.00, ordered to pay attorney's fees ($250.00) plus costs, and sentenced to seven days imprisonment which was placed in abeyance for three months so that the district judge could observe Mr. Ferry's compliance with the judgment.

ISSUE
Mr. Ferry devolutively appeals from the adverse ruling. The appellant contends that the trial court erred in finding him in contempt of the court order.

CONSTRUCTIVE CONTEMPT
The authority to punish for contempt of court is an inherent power of the court which is conferred to aid in the exercise of its jurisdiction and the enforcement of its lawful orders. In Re Merritt, 391 So.2d 440 (La.1980).
The Louisiana Code of Civil Procedure defines contempt thusly:
"A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority."
La.C.C.P. Art. 221. This Article further delineates two kinds of contempt, i.e., direct and constructive.
Constructive contempt of court encompasses all contempt actions except direct contempt. For our consideration in the instant case, La.C.C.P. Art. 224 sets forth acts which constitute constructive contempt of court, including:
"* * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court ...."
Under this provision "wilful disobedience means an act or failure to act that is done intentionally, knowingly, and purposely, without justifiable excuse." Nelson v. Nelson, 421 So.2d 366, 368 (La.App. 1st Cir. 1982). Punishment imposed for contempt of court is provided for in La.R.S. 13:4611:
"(A) The supreme court, the court of appeal, the district courts, family courts and city courts may punish a person adjudged guilty of contempt of court therein, as follows:
* * * * * *
(3) For a deliberate refusal to perform an act which is yet within the power of the offender to perform, by imprisonment until he performs the act; and
(4) For any other contempt of court, by a fine of not more than two hundred and fifty dollars, or imprisonment for not more than thirty days, or both."
Mr. Ferry admitted at the hearing that he was aware of the ruling which contained the child visitation order, but that he had been advised by Mr. Bordelon of the Child Abuse Center not to permit Mrs. Ferry to exercise her visitation privileges. This action was in direct contravention of the court order, committed wilfully, intentionally, and knowingly. There existed no justification for Mr. Ferry's refusal, other than his disapproval of Mrs. Ferry's work schedule and that Mrs. Ferry was late in arriving on the evening of December 31, 1982. At the October hearing the district judge determined that the established arrangement did not jeopardize Danny's best interest.
The plaintiff-in-rule has the burden of proving that the defendant's conduct constituted a wilful disobedience of the trial court's order. Nelson v. Nelson, supra. At the January hearing, the district judge found that Mrs. Ferry had sustained the burden of proof and ruled the defendant-in-rule in constructive contempt, stating that he was required to obey the orders of the court and that this was the second time he had been involved in a contempt proceeding for disregarding the judgment.
This court has explained the general rules of a contempt proceeding in Lambert v. Adams, 347 So.2d 883 (La.App. 3rd Cir. 1977) as follows:
"First, the object and purpose of a contempt proceeding is to vindicate the authority and dignity of the court. It is not designed for the benefit of the litigants, even though infliction of punishment for *800 contempt may inure to the benefit of the mover in the contempt rule. State ex rel. Duffy and Behan v. Civil District Court for Parish of Orleans, 112 La. 182, 36 So. 315 (1904); Robertson v. Robertson, 258 So.2d 125 (La.App. 2d. Cir. 1972). Second, unless a litigant willfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant. State ex rel. Duffy and Behan, supra. Third, proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Roy v. Berard, 227 La. 86, 78 So.2d 519 (1955); Junius Hart Piano House v. Ingman, 119 La. 1017, 44 So. 850 (1907). Fourth, as a general rule, contempt proceedings should not be resorted to where other specific remedies are provided by law. State ex rel. Duffy and Behan, supra; In re State ex rel. Hero, 36 La.Ann. 352 (1884); Junius Hart Piano House v. Ingman, supra." At 884-885.
The trial judge considered the law and evidence in the instant case, and correctly reasoned that Mr. Ferry wilfully disobeyed a direct order of the court, issued prior to the contempt rule. The court strictly construed the law applicable to the contempt proceedings and resorted to the judgment against Mr. Ferry because no other specific remedies were available to enforce the visitation order. The purpose and object of the contempt proceeding were met, i.e., the authority and dignity of the court were vindicated.
We affirm the judgment of the trial court which held Frank D. Ferry in contempt of the court order of October 4, 1982. As the court noted in James v. Spears, 372 So.2d 617 (La.App. 1st Cir. 1979):
"Under La.CCP 224 and our jurisprudence, it must be shown that the alleged offender willfully disobeyed a direct order of the court issued prior to the contempt rule; otherwise he should not be held in contempt."
At 620, citing Lambert v. Adams, supra.
We conclude that the record reveals a reasonable factual basis for the findings of the trial court. Not only is there an absence of manifest error in the contempt judgment, it is manifestly correct.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs on appeal are assessed against appellant.
AFFIRMED.
NOTES
[*] Mr. Ferry wanted to change the days Mrs. Ferry exercised her visitation rights.
[1] The judgment set forth the visitation arrangement as follows: Mrs. Ferry would have the child every second weekend commencing at 5:00 P.M. on Friday and continuing until 5:00 P.M. on Sunday; she would also have the child every other major holiday.

The child custody order is on a separate appeal.
[2] A similar situation occurred when Mr. Ferry again refused to give the child to Mrs. Ferry for the weekend of January 14-16, 1983.